United States District Court
Southern District of Texas
**ENTERED**
October 17, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| SCOTT MARTIN, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:23-cv-03228 |
| § | |
| MARILYN BURGESS, *et al.*, § | |
| § | |
| Defendants. § | |

# OPINION AND ORDER

Pending before me is an Application for Temporary Restraining Order and Preliminary and Permanent Injunction ("Application") filed by Plaintiff Scott Martin ("Martin"). Dkt. 1. Also pending is a Motion to Dismiss filed by Harris County Clerk Marilyn Burgess ("Burgess"), Judge Shannon Baldwin ("Judge Baldwin"), and Judge Genesis Draper ("Judge Draper") (collectively, "Defendants") in their official and individual capacities. Dkt. 22. Having considered the parties' briefing and oral arguments, the record, and the applicable law, I **DENY** Martin's Application, and **GRANT** Defendants' Motion to Dismiss.

## BACKGROUND

Martin is in the business of collecting and distributing criminal defendants' contact information and providing full-service mailing to private defense attorneys. For decades, Martin has primarily obtained criminal defendants' contact information from bonds filed in public court records.

On June 27, 2023, Judge Draper—at the time, the Presiding Judge of the Harris County Criminal Courts at Law ("HCCCL")—issued Administrative Order 2023-02 (the "Bond Order"):

> Pursuant to TEXAS GOV'T CODE § 75.403 (designating the Presiding Judge of Harris County Courts at Law as the chief administrator of court-related ministerial services in misdemeanor cases), IT IS HEREBY ORDERED that the Harris County District Clerk keep confidential the contents of any General Order Bond

[GOB] or Personal Bond [PR Bond] filed in misdemeanor criminal cases assigned to the Harris County Criminal Courts at Law. The title, filing date, and page enumeration of the filed General Order Bond or Personal Bond is to remain viewable to the public.

IT IS FURTHER ORDERED that General Order bonds and Personal Bonds are only to be filed as confidential documents until the current plan to segregate a defendant's personal identifying information to a separate confidential page can be implemented. Once this plan is implemented, the Harris County District Clerk is ORDERED to resume the practice of publishing the portions of the General Order Bonds and Personal Bonds that do not contain the defendant's personal identifying information. Until such time, no person or entity is permitted to access confidential bond filings unless such person or attorney of record, or entity is party to the action or for good cause shown, as determined by a presiding judge of a Harris County Criminal Court at Law.

Dkt. 1-2 at 1.

According to Martin, Burgess has gone "beyond enforcing the four corners of the Bond Order" by making "confidential many non-GOB or PR Bonds (Other Bonds) from the HCCCL, as well as many GOB, PR, and Other Bonds from the Felony Courts." Dkt. 1 at 4. The enforcement of the Bond Order has severely damaged Martin's business. Martin contends that "the restriction of access to [criminal defendants' contact] information is a violation of his First and Fourteenth Amendment rights." *Id.*

On August 31, 2023, Martin instituted this lawsuit against Defendants[1] seeking injunctive relief, attorneys' fees and costs, and damages for violations of his civil rights. Defendants have moved to dismiss, arguing that the suits against them in their official capacities are barred by Eleventh Amendment immunity, and the suits against them in their individual capacities are barred by judicial immunity, quasi-judicial immunity, qualified immunity, and/or official immunity. Defendants also contend that they did not violate Martin's constitutional rights.

---

[1] Judge Baldwin has since assumed Judge Draper's role as the Presiding Judge of the HCCCL and has not rescinded the Bond Order.

After briefing was complete, Martin filed a supplement complaining that "the Clerk's office has moved criminal defendants' addresses to a restricted 'second page' on most bonds, further restricting Plaintiff's access to that information, including on felony bonds and other bonds that were not included in the Bond Order." Dkt. 27 at 2. According to Martin:

> Information that has been moved includes both phone numbers and addresses; on felony bonds in particular, which were not included in the Bond Order, addresses had been widely available before the change, but are now restricted.
>
> Even bond types that are typically unrestricted, such as surety bonds, out-of-county bail bonds, and cash bonds are now sometimes restricted. Specifically, since this change took place, there were 222 surety, out-of-county, and cash bonds, and 61 of those were restricted without explanation. Moreover, the only obtainable phone numbers from bonds since the change were from previous, pre-change data.

*Id.* at 3 (emphasis omitted).

## LEGAL STANDARDS

### A.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Rule 12(b)(1) allows a party to challenge the subject-matter jurisdiction of the district court to hear a case. *See* FED. R. CIV. P. 12(b)(1). A claim is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when "the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). District courts are generally expected to "determine their own subject-matter jurisdiction before proceeding to a determination on the merits." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018). A claim of Eleventh Amendment sovereign-immunity implicates a federal district court's subject matter jurisdiction to hear a case. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).

### B.   ELEVENTH AMENDMENT IMMUNITY

When a plaintiff sues a county judge in her official capacity, the suit is treated as a suit against the county itself. *See Kentucky v. Graham*, 473 U.S. 159,

166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Because county judges are an arm of the State, they "are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

A narrow exception to this immunity was first recognized by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). The Fifth Circuit has explained the *Ex parte Young* exception to Eleventh Amendment immunity:

> The Eleventh Amendment bars suits by private citizens against a state in federal court, irrespective of the nature of the relief requested. A plaintiff may not avoid this bar simply by naming an individual state officer as a party in lieu of the State. Yet, few rules are without exceptions, and the exception to this rule allows suits against state officials for the purpose of enjoining the enforcement of an unconstitutional state statute. This exception rests on the fiction of *Ex parte Young*—that because a sovereign state cannot commit an unconstitutional act, a state official enforcing an unconstitutional act is not acting for the sovereign state and therefore is not protected by the Eleventh Amendment.

*Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001) (citation omitted). But the exception applies only in equity and only where a plaintiff seeks "prospective relief against a state employee acting in his official capacity." *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 321 (5th Cir. 2008).

**C.     JUDICIAL IMMUNITY**

"A judge generally has absolute immunity from suits for damages." *Davis v. Tarrant Cnty.*, 565 F.3d 214, 221 (5th Cir. 2009). The "two circumstances under which judicial immunity may be overcome" are (1) "actions not taken in the judge's judicial capacity," and (2) actions that, although "judicial in nature," are "taken in the complete absence of all jurisdiction." *Id.* (quotation omitted). Such actions are *ultra vires*—"actions that fall outside the scope of their duties." *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019).

4

Even when a judge is entitled to judicial immunity, however, the Supreme Court has held "that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984); *see also Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985) ("Judicial immunity does not extend to suits for equitable and declaratory relief.").

D.   **INJUNCTIVE RELIEF**

"The test for whether to grant or deny a preliminary injunction is long-standing and familiar." *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024). The party seeking injunctive relief bears the burden of persuading the court that "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest." *Id.* "The first factor—likelihood of success on the merits—is the most important." *Id.* (quotation omitted).

E.   **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

A complaint may be dismissed when the plaintiff has "fail[ed] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. At the initial pleading stage, I accept as true all well-pleaded factual allegations in the Complaint. *See Twombly*, 550 U.S. at 555–56.

## ANALYSIS

Ordinarily, I would address the multitude of immunity defenses before turning to the merits of the lawsuit. In this case, however, Martin seeks prospective injunctive relief in addition to a declaratory judgment and damages. Even if

Eleventh Amendment immunity and judicial immunity apply here, such immunities do not shield Defendants from Martin's application to enjoin the Bond Order. Because decades-old Supreme Court precedent—*Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32 (1999)—rendered Martin's Application dead on arrival, I will skip any question of immunity and proceed straight to the merits.[2]

### A. THE BOND ORDER IS FACIALLY CONSTITUTIONAL.

In *United Reporting*, the defendant was "a private publishing service that provide[d] the names and addresses of recently arrested individuals to its customers, who include[d] attorneys, insurance companies, drug and alcohol counselors, and driving schools." *Id.* at 34. "Before July 1, 1996," California law "generally required state and local law enforcement agencies to make public the name, address, and occupation of every individual arrested by the agency." *Id.* Effective July 1, 1996, California amended the law to restrict access to arrestees' addresses to individuals who declared under penalty of perjury that the address would "not be used directly or indirectly to sell a product or service." *Id.* United Reporting, like Martin here, "sought declaratory and injunctive relief . . . [that the law was] unconstitutional under the First and Fourteenth Amendments." *Id.* at 36. The district court held, and the Ninth Circuit Court of Appeals affirmed, "that the statute was facially invalid under the First Amendment" because it "restricted commercial speech." *Id.* at 37. The United States Supreme Court reversed.

---

[2] Martin relies heavily on *Scham v. District Courts Trying Criminal Cases*, 967 F. Supp. 230 (S.D. Tex. 1997), in arguing why he is entitled to relief. In *Scham*, the court granted summary judgment to a criminal defense attorney who sued after the administrative judge of the Harris County district courts unilaterally issued an order prohibiting the release of criminal defendants' contact information until the defendant either hired an attorney or had one appointed. The court avoided "determining whether the plaintiff has a federal constitutional right to the information," holding instead that "the plaintiff has a federal constitutional right not to be denied the information based on a *void* order." *Id.* at 234. I do not reach the parties' arguments about *Scham* because (1) it is not binding precedent; (2) it was issued two years *before* the Supreme Court's decision in *United Reporting*; and (3) any applicability that *Scham* might have is undercut by the fact that the court never identifies the "federal constitutional right" that underpins its decision.

6

The Supreme Court held that the law was "not an abridgment of anyone's right to engage in speech, be it commercial or otherwise, but simply a law regulating access to information in the hands of the police department." *Id.* at 40. The logic of that decision applies with full force to the facts of this case:

> This is not a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses. The [Bond Order] in question merely requires that if [Martin] wishes to obtain the [personal identifying information of criminal defendants in Harris County he] must qualify under the [Bond Order] to do so. . . . For purposes of assessing the propriety of a facial invalidation, what we have before us is nothing more than a governmental denial of access to information in its possession. ***[Harris County] could decide not to give out [criminal defendants' personal identifying] information at all without violating the First Amendment.***

*Id.* at 40 (emphasis added) (citation omitted).

In light of this binding precedent, which seems to be on all fours with this matter, I gave the parties an opportunity to brief the applicability of *United Reporting* to this case. *See* Dkt. 40. Martin tries desperately to distinguish this case, arguing that

> *United Reporting* was about whether or not United Reporting could access police department internal records, while this case is about whether or not public records regarding *entire classes of criminal defendants* should be *removed and restricted by default*, without reaching any particularized determination as to a need for secrecy in specific cases.

Dkt. 42 at 2. Martin goes on to note

> three other key distinctions that caution against applying *United Reporting* to the facts of this case: (1) *United Reporting* involved the State of California passing a statute that restricted the information at issue, whereas this case involves *local district court judges* restricting public records; (2) *United Reporting* involved law enforcement agencies publishing their own internal records, whereas this case involves the government publishing public criminal trial records, as it had done by default in the past; and (3) *United Reporting* involved the agencies publishing information pursuant to a statute that was then changed, whereas this case involves the District Clerk publishing

7

public records pursuant to the First and Sixth Amendments to the U.S. Constitution.

*Id.* at 2–3. These are all distinctions without a difference. Martin offered me a dozen cases in support of this argument. None convince me that *United Reporting* should not dictate the result in this case.

The bulk of cases that Martin cites are cases concerning the First Amendment right of access to criminal *proceedings*. *See Press-Enter. Co. v. Superior Ct. of Cal., Riverside Cnty.* ("*Press-Enter. I*"), 464 U.S. 501, 513 (1984) (holding that a judge could not constitutionally close all but three days of six weeks of *voir dire* examinations); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 610–11 (1982) (finding unconstitutional a Massachusetts statute, as construed by the Massachusetts Supreme Court, requiring trial judges, at trials for specified sexual offenses, to exclude the press and public from the courtroom during the testimony of victims under 18 years old); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 (1980) (holding that "the trial of a criminal case must be open to the public"); *United States v. Chagra*, 701 F.2d 354, 363–64 (5th Cir. 1983) (The Fifth Circuit "agree[s] with the Third Circuit's conclusion that the same societal interests that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply to pretrial criminal proceedings," and "extend[s] this to bail reduction hearings." (cleaned up)). But criminal defendants' contact *information* is not a *proceeding*. Sure it *derives* from a criminal proceeding. But no one is closing the Harris County courthouse doors to the public during bond hearings—that would clearly be unconstitutional. Restricting public access to criminal defendants' contact information, however—even from a judicial record—simply does not implicate the First Amendment right of access to criminal proceedings.

**B. THE BOND ORDER DOES NOT IMPLICATE THE FIRST AMENDMENT RIGHT OF ACCESS TO CRIMINAL PROCEEDINGS.**

Throughout his briefing, Martin appears to have confused the First Amendment right of access to criminal proceedings with the common law qualified

8

right of access to judicial records. As the Fifth Circuit has noted, these two rights "differ in significant ways." *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 n.1 (5th Cir. 2017). "Where the State attempts to deny the [First Amendment] right of access [to criminal proceedings] in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Press-Enter. I*, 464 U.S. at 510 (cleaned up). Yet, when it comes to the common law qualified right of access to judicial records, the Supreme Court has recognized a much lower bar for restricting public access:

> It is uncontested . . . that the right to inspect and copy judicial records ***is not absolute. Every court has supervisory power over its own records and files***, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case. Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing.

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (emphasis added) (cleaned up). Thus, only if the Bond Order implicates Martin's First Amendment right of access to criminal proceedings may Martin attempt to apply strict scrutiny to the Bond Order.

> The Supreme Court has developed a two-part test for determining whether there is a First Amendment right of access to a particular criminal proceeding: (1) whether the proceeding has historically been open to the public and press; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question."

*In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 175 (5th Cir. 2011) (quoting *Press-Enter. Co. v. Superior Ct. of Cali. for Riverside Cnty.* ("*Press-Enter. II*"), 478 U.S. 1, 8–9 (1986)). As noted above, we are not dealing with a proceeding, but a record.

For this reason alone, it is clear that the Bond Order does not implicate Martin's First Amendment right of access to criminal proceedings.

Martin cites one Ninth Circuit case, presumably, for the proposition that the First Amendment right of access extends "to pretrial release proceedings ***and documents filed therein***." *Seattle Times Co. v. U.S. Dist. Ct. for W. Dist. of Wash.*, 845 F.2d 1513, 1517 (9th Cir. 1988) (emphasis added). But Martin has not alleged that the bonds themselves are restricted from public view. Rather, "the Clerk's Office has moved criminal defendants' addresses to a restricted 'second page' on most bonds." Dkt. 27 at 2. Thus, Defendants have not restricted the public's access to information revealing "whether [defendants] should be incarcerated prior to trial," which is "often important to a full understanding of the way in which the judicial process and the government as a whole are functioning." *Seattle Times*, 845 F.2d at 1517 (quotation omitted). Martin does not advance—and I cannot conceive of—an argument for how accessing criminal defendants' contact information "plays a significant positive role in the functioning of" bond hearings. *Press-Enter. II*, 478 U.S. at 8.[3] Because the Bond Order does not implicate the First Amendment right of access to criminal proceedings, and because the Bond Order is within HCCCL's "supervisory power over its own records and files," Martin's challenges to the Bond Order necessarily fail. *Nixon*, 435 U.S. at 598.

---

[3] Nor does accessing criminal defendants' contact information implicate the principles that undergird the common law qualified right of access to judicial records. The Fifth Circuit has identified "three mutually reinforcing reasons" for why "judges must protect public accessibility" to judicial records: "(1) the public has a right to monitor the exercise of judicial authority; (2) judges are the primary representatives of the public interest in the judicial process; and (3) the judiciary's institutional legitimacy depends on public trust." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021) (cleaned up). Yet, none of these fundamental tenets is impacted by Martin's inability to access criminal defendants' phone numbers and addresses. For all these reasons, Martin cannot state a First Amendment claim against Defendants.

## C. THE BOND ORDER IS NOT A PRIOR RESTRAINT ON SPEECH.

Martin also claims "[t]he Bond Order is an . . . unconstitutional prior restraint on Plaintiff's and his clients' protected commercial speech." Dkt. 1 at 10. Not so.

"Prior restraints typically involve administrative and judicial orders such as temporary restraining orders and permanent injunctions forbidding certain communications when issued in advance of the time that such communications are to occur, or, in other words, laws which require a speaker to obtain prior approval for any expressive activities." *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 235 (5th Cir. 2012) (cleaned up). Here, the Bond Order does not purport to restrict Martin's ability to publicize criminal defendants' contact information.[4] The Bond Order simply makes it more difficult for Martin to access such information. Because the Bond Order does not bar future speech, it is not a prior restraint. *See Gibson*, 700 F.3d at 235.[5]

## D. MARTIN DOES NOT HAVE A PROPERTY INTEREST IN CRIMINAL DEFENDANTS' CONTACT INFORMATION.

Finally, Martin takes issue with the manner in which he lost access to criminal defendants' contact information, arguing that such information cannot

---

[4] This is a stark contrast to the law at issue in *United Reporting*. In that case, United Reporting ultimately prevailed on its First Amendment challenge because "if [United Reporting] signed the declaration required by the statute it could be prosecuted for indirectly using arrestee addresses to sell a product or service." Final Judgment on Consent at 5, *United Reporting Publ'g Corp. v. Cali. Highway Patrol*, Case No. 96-cv-888 (S.D. Cal. Aug. 13, 2001), ECF No. 155. Martin faces no such threat of prosecution for publishing criminal defendants' contact information should the HCCCL Presiding Judge find "good cause" for permitting him access to such information. Dkt. 1-2 at 1.

[5] To the extent Martin would argue the Bond Order is an unconstitutional prior restraint on his First Amendment right to *receive* speech, that argument would also fail. "Freedom of speech presupposes a willing speaker." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). Given that the HCCCL is the only conceivable entity with the ability to "speak" criminal defendants' contact information—by permitting access through the court's electronic filing system—and the Bond Order is evidence of its *un*willingness to do so, it is difficult to fathom who would be a willing speaker in this scenario.

"be *removed and restricted by default*, without reaching any particularized determination as to a need for secrecy in specific cases." Dkt. 42 at 2. Martin appears to believe that he has been deprived of "property interests without any form of process." Dkt. 1 at 10. To succeed with such an argument, Martin must show that he has a vested property interest in criminal defendants' information. Martin's best argument on this front appears to be that he has long had access to such information. But that is not the standard.

The Supreme Court has held that "the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). In Texas, "[a]ccess to information collected, assembled, or maintained by or for the judiciary is governed by rules adopted by the Supreme Court of Texas or by other applicable laws and rules." TEX. GOV'T CODE ANN. § 552.0035(a). The Texas Rules of Judicial Administration, promulgated pursuant to § 72.024 of the Texas Government Code, provide that "[a]ny record reflecting any person's home address [or] home or personal telephone number" is "exempt from disclosure." TEX. R. JUD. ADMIN. 12.5(d). Against the backdrop of this law, it is difficult to imagine any viable argument that Martin has a vested property interest in criminal defendants' contact information.

\* \* \*

For all these reasons, Martin's constitutional challenges to the Bond Order fail.

## CONCLUSION

Martin's Application (Dkt. 1) is **DENIED**, and Defendants' Motion to Dismiss (Dkt. 22) is **GRANTED**. I will issue a final judgment separately.

SIGNED this 17th day of October 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE